

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2021

**BY ECF**
Hon. John P. Cronan
United States District Judge
Shawn Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re: *United States v. Shawn Jenkins*, 20 Cr. 639 (JPC)

Dear Judge Cronan:

    The Government submits this letter in advance of the March 15, 2021 sentencing of the defendant, Shawn Jenkins ("Jenkins" or the "defendant"). For the reasons set forth below, the Government respectfully submits that a sentence within the stipulated guidelines range (the "Guidelines Range") of 37 to 46 months' imprisonment is sufficient but not greater than necessary to serve the purposes of sentencing.

### I. Offense and Relevant Conduct

    On or about June 1, 2020, Jenkins threw an incendiary device – consisting of a glass bottle which contained an accelerant and wick – in the direction of two police vehicles located at the 42nd Police Precinct (the "Precinct"). (PSR ¶¶ 6, 11.) The incendiary device missed the police vehicles and, instead, hit an adjoining car, which is privately owned by an NYPD officer of the Precinct. (PSR ¶ 7.) Before throwing the incendiary device, Jenkins stopped in front of a nearby shelter and told an individual standing outside, in sum and substance, "ya might wanna get out of here, I'm gonna throw this at the police." (PSR ¶ 8.)

### II. Procedural History, Guilty Plea, and Applicable Guidelines Range

    On October 28, 2020, Jenkins was arrested pursuant to a criminal complaint charging him with violations of 18 U.S.C. §§ 18 U.S.C. §§ 844(f) and 2 (arson). On November 11, 2020, the Government provided Jenkins with a plea agreement (the "Plea Agreement") in advance of his guilty plea. On November 30, 2020, the Government filed an information charging the defendant with violations of 26 U.S.C. § 5861(f) (making a firearm) (the "Information"), and Jenkins pleaded guilty to the one-count Information. The offense of conviction carries a maximum term of imprisonment of 10 years.

As detailed in the Plea Agreement, Jenkins's total offense level is calculated as follows:

- The November 1, 2018 edition of the Guidelines Manual is applicable to the offense charged in the Information.

- Pursuant to U.S.S.G. § 2K2.l(a)(4)(B), the base offense level is 20 because the offense involved a firearm that is described in 26 U.S.C. § 5845(a) and the defendant was a prohibited person at the time the defendant committed the offense.

- Pursuant to U.S.S.G. § 2K2.l(b)(3)(B), a two-level enhancement applies because the offense involved a destructive device other than that described in U.S.S.G. § 2K2.l(b)(3)(A).

- The offense level is decreased by two levels because Jenkins demonstrated acceptance of responsibility through his allocution (and will presumably continue to accept responsibility prior to imposition of a sentence). *Id.* § 3E1.1(a). Furthermore, because the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Therefore, the total offense level under the Sentencing Guidelines is 19.

With respect to criminal history, the Plea Agreement calculated four criminal history points, placing Jenkins within Criminal History Category III. The Probation Office concurs in this calculation. (PSR ¶ 96.)

Accordingly, Jenkins's Guidelines Range is 37 to 46 months' imprisonment.

### III. Discussion

#### A. Applicable Law

While advisory following *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines remain "the starting point and the initial benchmark" for sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007). That is because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. For that reason, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In imposing a sentence, the Court must consider the factors set forth at 18 U.S.C. § 3553(a), which include "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and "the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct," *id*. § 3553(a)(6). The factors also include the "need for the sentence imposed"

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

*Id.* § 3553(a)(2).

### B. The Court Should Impose a Sentence Within the Guidelines Range

A sentence within the Guidelines Range would appropriately take into account the factors set forth in 18 U.S.C. § 3553(a).

*First*, a sentence within the Guidelines Range would serve the significant goals of promoting respect for the law and reflecting the seriousness of the offense. The defendant engaged in conduct that could have endangered the lives of many officers. The glass bottle—which was thrown in the immediate vicinity of the Precinct—could have easily caused life-threatening harm if officers had been present. Luckily, the fire caused by the incendiary device was quickly identified and extinguished and caused damage only to a vehicle. Surely, however, the outcome could have been much more severe. A Guidelines sentence is therefore necessary to promote respect for the law and to reflect the seriousness of the defendant's dangerous conduct.

*Second*, the history and characteristics of the defendant and the need to protect the community also support a sentence within the Guidelines Range. The instant offense represents the defendant's 14th known criminal conviction. The defendant's prior convictions include another federal conviction in the Southern District of New York for being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1), for which he received a one-year and one-day term of imprisonment, *see United States v. Jenkins*, 15 Cr. 539 (ALC), and a state conviction for criminal possession of a weapon in the fourth degree, in violation of Section 265.01 of the New York Penal Law, for which he received a one-year term of imprisonment. The defendant's substantial criminal history, including two prior convictions for possession of a firearm, in addition to the defendant's current conviction for making a firearm, warrants a sentence within the Guidelines Range in order to protect the community from similar future harm.

*Third*, a sentence within the Guidelines range is appropriate to afford adequate deterrence to this perilous criminal conduct. The defendant's conduct was not only highly dangerous, but also intended to harm the very individuals responsible for protecting our communities. Unfortunately, law enforcement officers, and the vehicles and precincts in which they operate,

have increasingly become targets of acts of violence such as the one engaged in by the defendant.[1] And while the defendant now claims that he harbors "no hatred towards our police department whom risk their lives every day to keep our city safe," his actions—which specifically endangered law enforcement—tell another story. (Def. Sent. Br. at 2.) Nor does the fact that the defendant may have acted "while drunk and high, and not because he harbored any ill feelings towards law enforcement" mediate the dangerousness of his actions. Indeed, it is critical that members of the general public—whether politically motivated or otherwise—understand that such criminal conduct carries serious consequences. A sentence within the Guidelines range is therefore also necessary to afford adequate general deterrence.[2]

The current conditions at the MCC resulting, at least in part, from the COVID-19 pandemic, do not warrant a below-Guidelines sentence. The Government is certainly sympathetic to Jenkin's claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, the defendant's medical records (attached hereto as Exhibit A) indicate that the defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. (Ex. A at 13, 16, 42, 50.) Further, nothing in Jenkin's medical records indicates that the MCC failed to provide him with proper medical treatment while incarcerated or to take appropriate medical precautions to avoid his illness. In sum, Jenkins ▮▮▮▮▮▮▮▮▮▮▮▮ while incarcerated—despite precautions taken by the MCC—but nonetheless received satisfactory medical treatment for his illness while there. As such, the fact of his illness, in and of itself, should not warrant a below-Guidelines sentence.[3]

---

[1] *See, e.g.*, ABC, *Brooklyn Protests: 3 People, Including Catskills Woman, Face Federal Charges In Molotov Police Attacks: Source* (May 31, 2020), https://abc7ny.com/brooklyn-protests-protest-arrests-sisters-throw-molotov-cocktail-at-police-car-george-floyd/6221319/; CBS3 Philly, *Philadelphia Police Officers Hit With Bricks, Molotov Cocktails, Vehicles Set On Fire As Looters Strike Across City* (June 1, 2020), https://philadelphia.cbslocal.com/2020/06/01/several-philadelphia-police-vehicles-set-on-fire-looted-as-violence-takes-hold-in-west-philly-over-60-arrests/; King5, *Man, Woman Charged For Alleged Molotov Cocktail Attack On Seattle's East Precinct During Riot* (Oct. 17, 2020), https://www.king5.com/article/news/crime/man-woman-charged-for-alleged-molotov-cocktail-attack-on-seattles-east-precinct-during-riot/281-f0fc5597-d394-40c0-8498-c69aa5a23040.

[2] The defendant's comparison to *United States v. Luis Saquicili*, 18 Cr. 137 (VEC), in requesting a below-Guidelines sentence, is misplaced. While the defendant in *Saquicili* was convicted of the same charge as the defendant in this matter, the similarities end there. Saquicili had zero criminal history points and his conduct—although dangerous—could therefore be interpreted as "somewhat of an aberration in the defendant's life" since he was "generally a law-abiding person." (Dkt. 34 at 5-6, 11). Here, by contrast, the defendant has an extensive criminal history of similar conduct, namely, possession of firearms. Further, in *Saquicili*, the Court indicated that general deterrence was not a significant sentencing factor because the defendant threw the incendiary device at a bar as a result of "react[ing] violently to being snubbed by his regular bar." (*Id.* at 11, 13.) Here, for the reasons described above, there is a significant need for general deterrence, in that the defendant directly targeted law enforcement officers at his local precinct.

[3] It bears noting that the defendant's proposed re-entry plan, were he to be granted a below-Guidelines sentence, is also significantly flawed. Although the defendant offers to reside at the residence of his partner, Nikita Husbands, a national criminal records check revealed

Page 5

## IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines Range of 37 to 46 months' imprisonment.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: /s/ Mitzi Steiner
Mitzi S. Steiner
Assistant United States Attorney
(212) 637-2284

---

approximately 13 cleared and/or expired temporary Orders of Protection that were issued to Ms. Husbands and/or her children between 2019 and 2020. (PSR ¶ 46.) Ms. Husbands's residence therefore appears to be far from a "stable residence and one to which Mr. Jenkins can return." (Def. Sent. Br. at 39).